# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ALFONSO BROWN, | ) |
| Plaintiff, | ) ) ) |
| | ) No. 15 C 2844 |
| v. | ) |
| | ) Judge Sara L. Ellis |
| GLENN EVANS, RUBEN VARGAS, THERESA A. WALDBUESSER, CHRIS C. YOUNG, LUIS A. CENTENO, UNKNOWN OFFICERS OF THE CHICAGO POLICE DEPARTMENT, and CITY OF CHICAGO, | ) ) ) ) ) ) ) |
| Defendants. | ) |

## **OPINION AND ORDER**

Plaintiff Alfonso Brown brings this suit against Chicago Police Commander Glenn Evans, Chicago Police Officers Ruben Vargas, Theresa A. Waldbuesser, Chris C. Young, Luis A. Centeno, unknown Chicago Police Officers, and the City of Chicago alleging constitutional violations under 42 U.S.C. § 1983 and state law tort claims arising from an incident with the police in March 2014. Defendant City of Chicago (the "City") moves to dismiss Brown's *Monell* claim on the basis that it is insufficiently pleaded [30]. Defendants Vargas, Waldbuesser, Young, and Centeno (collectively, "the Officer Defendants") included a Federal Rule of Evidence 12(b)(6) defense in their Answer, arguing that the Complaint contained no facts about the illegal search alleged in Count III [25].[1] The City's motion to dismiss and the Officer Defendants' 12(b)(6) defense are granted. Because the *Monell* and illegal search claims are insufficiently pleaded, Counts III and XII are dismissed without prejudice.

---

[1] Defendant Evans filed his own Answer [22] and has not joined in the above motions although Count III is also directed at him.

# BACKGROUND[2]

On the evening of March 31, 2014, Brown was sitting on the steps of his sister's home at 1133 N. Springfield in Chicago, Illinois. The Defendant Officers, Evans, and unknown officers "maybe totaling 20 or more," began harassing Brown and other neighbors. Compl. ¶ 9. Evans, a Commander in the Police Department, ordered Brown to "get your ass off the porch" and walk over to him. *Id.* ¶ 10. Brown, afraid, knocked on his sister's door to get her attention and help. Evans ordered Officer Vargas to "go get him." *Id.* ¶ 12. Vargas jumped the fence, "rudely and roughly grabbed [Brown] and cuffed him." *Id.* ¶ 13. Vargas warned Brown not to upset Evans. Because Vargas could not open the gate, he uncuffed Brown, ordered him to open the gate, and then re-cuffed him.

Brown's sister came out onto the porch and, upset at the scene, called 911. Evans intercepted the 911 call and told the dispatcher to ignore this and all further calls from that location. Brown's sister repeatedly asked what was going on and Evans told her to "shut the hell up." *Id.* ¶ 17. When Brown's sister continued to ask questions, Evans told Officer Waldbuesser to charge Brown with something. When Brown's sister continued to ask questions, Evans continued to order Waldbuesser to add charges, which she did.

Brown was given a ticket with charges that he was told carried a maximum of $3,000 in fines. Brown was detained in handcuffs for a substantial amount of time, while Evans verbally abused him, calling him names such as "Mulatto" and "Dumb Ass." *Id.* ¶ 20. Evans taunted Brown, daring Brown to sue him. Evans insisted that his name be put on the ticket and stated, "I'll come to court." *Id.* ¶ 21.

---

[2] The facts in the background section are taken from Brown's Complaint and are presumed true for the purpose of resolving the Rule 12(b)(6) challenges. *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011).

When Brown appeared in court on the charges, the case was non-suited.

Brown describes his damages as physical and emotional injury, humiliation, indignity, and great physical, mental, and emotional pain and suffering. He pleads that he was required to hire an attorney to vindicate his rights. Brown asks for "exemplary and punitive damages," and attorneys' fees. Compl. ¶ 25.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

**I.    The City's Motion to Dismiss Count XII, the *Monell* Claim**

The City argues that Count XII, Brown's claim against it alleging a policy or practice of encouraging police misconduct, should be dismissed because it is nothing more than conclusory statements. Brown seeks in his Response to offer additional facts of criminal charges and civil lawsuits filed against Commander Evans. He also argues that this claim is sufficiently pleaded

and discovery should proceed on this claim because the City has already engaged in substantial discovery in another case against Evans in this district.

A municipality may be held liable when "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). Liability may be premised on (1) an express policy that, when enforced, causes a constitutional violation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law; or (3) a constitutional injury caused by a person with final policymaking authority. *McCormick v. City of Chicago*, 230 F.3d 319, 324 (7th Cir. 2000).

In Count XII, Brown alleges that Evans was "violent, aggressive, and, in general, out-of-control" and that "[d]espite numerous serious citizen complaints," the City "tolerated, ignored, and even encouraged his conduct." Compl. ¶ 85. Brown further alleges that the events of March 31, 2014 happened "pursuant to the policy and widespread practice of the Chicago Police Department in that":

- a. As a matter of both policy and practice, the Chicago Police Department directly encourages, and thereby is the moving force behind, the very type of police misconduct at issue here by failing to adequately train, supervise, and control its officers, such that its failure to do so manifests deliberate indifference.

- b. As a matter of both policy and procedure, the Chicago Police Department facilitates the very type of police misconduct at issue here by failing to adequately punish and discipline prior instances of misconduct, thereby leading Chicago police officers to believe their actions will never be scrutinized and, in that way, directly encourages future abuses such as those affecting plaintiff.

> c. As a matter of widespread practice so prevalent as to comprise municipal policy, the Chicago Police Department makes findings of wrongdoing against its officers in a disproportionately small number of police abuse cases.
>
> d. Municipal policy-makers are aware of, and condone and facilitate by their inaction, a "code of silence" in the Chicago Police Department, by which officers fail to report misconduct committed by other officers, especially supervisory officers, such as the misconduct at issue in this case.
>
> e. The CITY OF CHICAGO has failed to act to remedy the patterns of abuse described in the preceding paragraphs, despite actual knowledge of same, thereby causing the types of injuries alleged here.

*Id.* ¶ 86. Brown further states: "[e]nabling police officers to be abusive to citizens, with no supervision or oversight, with inadequate training, and with no disciplinary consequences allowed the individual defendant officers in this action to act with impunity, with no fear that their actions would be scrutinized or that there would be any accountability." *Id.* ¶ 87.

The City argues that Brown's *Monell* allegations are only conclusions and bare recitations of the elements of the claim that are not sufficient under *Iqbal*. *See McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) ("We have interpreted *Twombly* and *Iqbal* to require the plaintiff to provide some specific facts to support the legal claims asserted in the complaint. The degree of specificity required is not easily quantified, but the plaintiff must give enough details about the subject-matter of the case to present a story that holds together." (alterations omitted) (citations omitted) (internal quotation marks omitted)). The Court agrees.

Brown's allegations in his *Monell* claim are focused first on Evans' actions; however, "a single isolated incident of wrongdoing by a nonpolicymaker is generally insufficient to establish municipal acquiescence in unconstitutional conduct." *See Armour v. County Club Hills*, No. 11 C 5029, 2014 WL 63850, at *6 (N.D. Ill. Jan. 8, 2014) (alteration omitted). And Brown's boilerplate policy and practice statements contain no facts that would allow a plausible inference

5

that the City has a practice or policy of failing to train, supervise, or discipline or condones a "code of silence." *See McCauley*, 671 F.3d at 618 (finding allegations of "a custom, practice and policy," without more, insufficient to state a *Monell* claim); *Mikolon v. City of Chicago*, No. 14 C 1852, 2014 WL 7005257, at *4 (N.D. Ill. Dec. 11, 2014) (dismissing similar claims as "only boilerplate conclusions, not well-pleaded facts").

Even considering the Complaint in the light most favorable to Brown, the allegations of the City's policy and practice claims are too vague and lacking in sufficient details to give proper notice of their basis. *Cf. Lanigan v. Vill. of E. Hazel Crest, Ill.*, 110 F.3d 467, 479–80 (7th Cir. 1997) (noting that Seventh Circuit reversed dismissal of *Monell* claim in *Sledd v. Lindsay*, 102 F.3d 282, 289 (7th Cir. 1996), because the complaint in *Sledd* included such details as the number of excessive force complaints filed against the Chicago Police Department, the number of complaints investigated, and the number of complaints the Police Department's Office of Professional Standards believed had merit); *Starks v. City of Waukegan*, No. 09 C 348, 2013 WL 5874563, at *2 (N.D. Ill. Oct. 31, 2013) (allowing failure to train claim to proceed where plaintiff alleged pattern of nine similar constitutional violations that City exacerbated by promoting instead of disciplining officers who were responsible for violations).

In support of his *Monell* pleading, Brown asks the Court to take notice of additional facts and a newspaper article submitted with his Response. *See* Doc. 36. In opposing a motion to dismiss, a plaintiff "may submit materials outside the pleadings to illustrate the facts the party expects to be able to prove" and "elaborate on his factual allegations so long as the new elaborations are consistent with the pleadings" without converting the motion to one for summary judgment. *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). First Brown states that in September 2014 Evans was charged with two felonies for assault on a

6

suspect and was relieved of his duties pending the outcome of that case. This fact supports the Complaint's allegations of misconduct by Evans. The City argues this fact entirely undercuts a theory of failure to discipline; however, Evans served for over ten years before being removed from the force, which could support a theory that the Department "turned a blind eye" to his conduct until a criminal charge forced the issue. Second, the attached newspaper editorial questions why, with Evans' history of citizen complaints, the Police Department continued to promote him. This article intimates that the Department approved of Evans' "aggressive policing style" because it resulted in a drop in the homicide rate. Doc. 36, Ex. A. Again, this relates directly to Evans' actions and the Department's view of his actions. However, it could also support an inference that Evans is one example of a wider failure to discipline. Similarly, Evans' history of citizen complaints and civil rights lawsuits supports Brown's theory that Evans is a bad actor and shows that the Department disciplined Evans in two out of at least forty-five excessive force complaints in a ten-year span. Although a municipality "cannot be held liable *solely* because it employs a tortfeasor," *see Monell*, 436 U.S. at 691, this long history of complaints without corresponding discipline edges the Complaint toward a policies or practice claim, *see Lanigan*, 110 F.3d at 479–80. Brown has not clearly stated the linkage between Evans' alleged violations and his *Monell* claim. He must do so to provide the City sufficient notice of the basis for these allegations. *See Hill v. City of Chicago*, No. 13 C 4847, 2014 WL 4922319, at *4 (N.D. Ill. Sept. 30, 2014) (dismissing failure to train and supervise *Monell* claims as time-barred, but also noting the claims were "too vague and conclusory"). The failure to supervise and discipline claims are therefore dismissed without prejudice to re-plead.

But none of Brown's new facts support even a stretched inference of a failure to train. "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns

7

on a failure to train" and "a municipality's failure to train its employees in a relevant respect must amount to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'" *Connick v. Thompson*, 563 U.S. 51, 131 S. Ct. 1350, 1359, 179 L. Ed. 2d 417 (2011) (second alteration in original) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989)). Although *Monell* claims may proceed with conclusory allegations of a policy or practice, some facts must be pleaded to put the defendant on notice of the alleged wrongdoing. *Armour*, 2014 WL 63850, at *6. Brown has not indicated any facts to support a failure to train claim. This aspect of his *Monell* claim is also dismissed without prejudice and with leave to re-plead.

Brown also directs the Court's attention to another case pending against Evans in the Northern District, stating the *Monell* claim survived dismissal there and has proceeded to discovery. Because the City has already engaged in *Monell* discovery in that case, Brown argues that it would not be inconvenient for it to do so here. The allegations of a different complaint involving different facts and actors are irrelevant to Brown's claims before this Court. *See Robinson v. Honeywell Corp.*, No. 00 C 50383, 2001 WL 1397873, at *1 (N.D. Ill. Nov. 7, 2001) (refusing to strike paragraph from complaint that another judge found to be irrelevant in summary judgment in another case: "that the court found certain statements to be irrelevant when addressing a motion for summary judgment in a different case does not automatically mean such evidence is irrelevant in this lawsuit"). Furthermore, the Court is disturbed by Brown's characterization that the *Monell* claim in that case was found to be sufficient, when in fact that court did not consider the sufficiency of pleading or the merits of that claim. *See King v. Evans*, No. 13 C 1937, Doc. 26 (Motion to Dismiss does not address *Monell* claim); Doc. 89 (Motion to Bifurcate *Monell* claim denied without prejudice: "If Plaintiff wants to pursue her *Monell* claim

8

she shall file by 12/12/2014 a motion before the District Judge seeking leave to file an amended complaint that fleshes out that claim as discussed on the record"); Doc. 84 (Minute Order giving leave to file the Amended Complaint without discussing the *Monell* claim); Doc. 132 (Order with Statement denying renewed Motion to Bifurcate on the basis of judicial efficiency, that *Monell* discovery would be limited, and no unfair prejudice). Furthermore, that discovery proceeded on the *Monell* claim in that case has no bearing on the sufficiency of Brown's pleadings.

The City's Motion to Dismiss the *Monell* claim is granted. Count XII is dismissed without prejudice.

## II. The Officer Defendants' Rule 12(b)(6) Defense to Count III, the Illegal Search Claim

In their Answer, the Officer Defendants assert a Rule 12(b)(6) defense, arguing that Brown has not alleged any facts to suggest that a search took place during the March 31, 2014 incident. Brown first argues that he should not be required to respond to this defense when no motion is pending, and second argues that the Complaint makes clear that Brown was subject to an unconstitutional search. Because Brown has pleaded no facts to suggest a search occurred, Count III is dismissed without prejudice.

As an initial matter, it is appropriate for the Defendant Officers to include a defense based on a failure to state a claim in their Answer. *See* Fed. R. Civ. P. 12(b)(6) ("Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party *may* assert the following defenses by motion: . . . (6) failure to state a claim upon which relief can be granted." (emphasis added)); *Sayad v. Dura Pharm., Inc.*, 200 F.R.D. 419, 422–23 (N.D. Ill. 2001) (refusing to strike Rule 12(b)(6) defense from answer, citing other Northern District decisions and the Appendix of Forms to the Rules of Civil Procedure). At the

9

July 14, 2015 status hearing, Defendant Officer's counsel apprised the Court of the defense and the Court deemed to treat it as a motion to be determined with the City's motion to dismiss. Brown's counsel requested briefing. There is no unfairness or surprise for either party that the issue is now before the Court.

Brown argues that the City has adequate notice of the search claim and further argues that,

> In the context of the other factual allegations in the complaint, that is, that at the order of defendant Glenn Evans, defendant Ruben Vargas jumped the fence and grabbed plaintiff, handcuffed him, and detained him, and defendant Theresa Waldbuesser wrote up false charges against plaintiff, it is clear that plaintiff is alleging that his person was searched and that the search was unconstitutional.

Doc. 37 at 2. On the contrary, there is nothing in this factual narrative or the rest of the Complaint to indicate that a search was part of the March 31, 2014 incident. That Brown was grabbed, handcuffed, and detained does not necessarily mean that he was searched. Brown does not state that any of the false charges against him related to possession of an unlawful substance or otherwise somehow resulted from a search. Brown states only that "[t]he search of the person of plaintiff, ALFONSO BROWN, was without probable cause and unreasonable," Compl. ¶ 34, but this is the only reference in the Complaint to a search. This legal conclusion is not enough to sustain this claim. *See McCauley*, 671 F.3d at 616 ("[L]egal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth."); *Danhauer v. Morgan Stanley Smith Barney, LLC*, No. 14 C 7938, 2015 WL 4387821, at *3 (N.D. Ill. July 8, 2015) ("Nor do plaintiff's bald assertions that Peterson was 'grossly negligent' establish the requisite culpability: although on a motion to dismiss plaintiff's allegations are presumed to be true, these kinds of assertions—consisting of bare legal conclusions with no factual specificity—are insufficient to survive a motion to dismiss.").

Count III is therefore dismissed without prejudice.

**CONCLUSION**

For the foregoing reasons, the City's motion to dismiss [30] is granted. Count XII is dismissed without prejudice. Also for the foregoing reasons, the Officer Defendants' Rule 12(b)(6) defense asserted in their Answer is granted. Count III is dismissed without prejudice. Brown is given January 28, 2016 to file an Amended Complaint.

Dated: January 6, 2016

SARA L. ELLIS
United States District Judge